## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

**AARON IFALOLA TAYLOR,**
11616 Lockwood Drive, Apt. T3
Silver Spring, MD 20904

     *Plaintiff,*

    vs.

**MONTGOMERY COUNTY, MARYLAND,**
    Serve: Marc Elrich, County Executive
    Executive Office Building
    101 Monroe Street
    Rockville, Maryland 20850

and

**OFFICER SERLO #2908**
*Individually and in his official capacity as*
*a Montgomery County police officer*
Montgomery County Police Department
100 Edison Park Drive
Gaithersburg, Maryland 20878

and

**DETECTIVE PARIS CAPALUPO #2086**
*Individually and in his official capacity as*
*a Montgomery County police detective*
Montgomery County Police Department
100 Edison Park Drive
Gaithersburg, Maryland 20878

and

**OFFICER WASHINGTON**
*Individually and in his or her official capacity as*
*a Montgomery County police officer*
Montgomery County Police Department
100 Edison Park Drive
Gaithersburg, Maryland 20878

and

*\*Jury Trial Demanded\**

Civil Case No. ___483539-V___

**RECEIVED**

SEP 2 3 2020

Clerk of the Circuit Court
Montgomery County, Md.

**DROP BOX**

OCT 2 2020 AM 11:59
County Attorney's Office

**OFFICER FOX**
*Individually and in his or her official capacity as*
*a Montgomery County police officer*
Montgomery County Police Department
100 Edison Park Drive
Gaithersburg, Maryland 20878

and

**SERGEANT MCDANNELL**
*Individually and in his or her official capacity as*
*a Montgomery County police officer*
Montgomery County Police Department
100 Edison Park Drive
Gaithersburg, Maryland 20878

and

**OFFICER LAURA ANDREALLO**
*Individually and in her official capacity as*
*a Montgomery County police officer*
Montgomery County Police Department
100 Edison Park Drive
Gaithersburg, Maryland 20878

and

**OFFICER COUTERMANCHE**
*Individually and in his or her official capacity as*
*a Montgomery County police officer*
Montgomery County Police Department
100 Edison Park Drive
Gaithersburg, Maryland 20878

        *Defendants.*

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, Aaron Taylor, by and through undersigned counsel, and sues

the above-named Defendants, stating as follows:



OCT 2 2020 AM 11:59
County Attorney's Office

2

## INTRODUCTION

1.      On or about July 26, 2017, Plaintiff Aaron Ifalola Taylor ("**Plaintiff**") was walking out of a Shell gas station when he was approached by a Montgomery County police officer. Despite Plaintiff having done nothing wrong, the Montgomery County police officer began harassing Plaintiff, forcing Plaintiff to place his hands on the hood of a running Montgomery County police cruiser.

2.      Plaintiff immediately told the Montgomery County police officer that his hands were burning, but the officer only pressed Plaintiff's hands more firmly against the hood of the car in response. Plaintiff was not permitted to remove his hands from the burning hood of the vehicle until a second Montgomery County police officer arrived and persuaded the first police officer to permit Plaintiff to remove his hands.

3.      Despite having no legal justification and no probable cause, the officers detained Plaintiff for nearly half an hour. In that time, more Montgomery County police officers arrived on scene, manhandling, searching, and photographing Plaintiff without Plaintiff's permission.

4.      Eventually, after an hour of being illegally detained without justification, one of the officers informed Plaintiff that they were seeking to rule him out as a shoplifting suspect.

5.      After three hours of being illegally detention, Plaintiff was finally released after an unidentified woman arrived at the scene and ordered the officers to release Plaintiff.

6.      Plaintiff told the officers that he would like to file a formal complaint regarding his treatment by the officers, and one of the officers on scene drove Plaintiff to the police station. At the station, Plaintiff was not provided the appropriate paperwork, but instead placed into an interrogation room and informed that he was being held for questioning regarding an armed robbery.

3

7.      Plaintiff was held for approximately six hours, during which the officers utilized varied psychologically damaging interrogation techniques despite having no legal justification and no probable cause for Plaintiff's detention.

8.      Plaintiff was finally released after officers executed a search warrant at Plaintiff's home and found no evidence to connect Plaintiff to the armed robbery.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction pursuant to Md. Code, Cts. & Jud. Proc., § 6-102, as Defendants are domiciled in the State of Maryland and/or are organized under the laws of Maryland and have their principal place of business in the State.

10.     Venue is proper in this forum pursuant to Md. Code, Cts. & Jud. Proc., § 6-201 as the named Defendants carry on their principal place of business in Montgomery County, Maryland, and all material events occurred in Montgomery County, Maryland.

11.     Plaintiff provided notice of his claim on July 24, 2018, via certified mail, return receipt requested, within one year of the date of the incident which is the subject of this lawsuit, as required by Md. Code, Cts. & Jud. Proc., § 5-304(b) and (c). All conditions precedent for the filing of this suit have been satisfied.

## PARTIES

12.     Plaintiff Aaron Ifalola Taylor ("**Plaintiff**") is an adult resident of Maryland.

13.     Defendant Montgomery County, Maryland ("**Defendant Montgomery County**") is a municipal corporation organized under the provisions of Art. XI-A of the Maryland Constitution.  At all times relevant herein, Defendant Montgomery County employed the individual Defendants, Officer Serlo #2908, Detective Paris Capalupo #2086, Officer Washington,

Officer Fox, Officer Courtemanche, Sergeant McDannell, and Officer Laura Andreallo, as Montgomery County police officers and/or as Montgomery County police detectives.

14.     Officer Serlo #2908 (**"Defendant Serlo"**) was employed by Defendant Montgomery County as a police officer, and at all times relevant hereto was acting in his official capacity as a Montgomery County police officer.

15.     Detective Paris Capalupo #2086 (**"Defendant Capalupo"**) was employed by Montgomery County as a police detective, and at all times relevant hereto was acting in his official capacity as a Montgomery County police detective.

16.     Officer Washington (**"Defendant Washington"**) was employed by Montgomery County as a police officer or police detective, and at all times relevant hereto was acting in his official capacity as a Montgomery County police officer or Montgomery County police detective.

17.     Officer Fox (**"Defendant Fox"**) was employed by Montgomery County as a police officer or police detective, and at all times relevant hereto was acting in his official capacity as a Montgomery County police officer or Montgomery County police detective.

18.     Officer Courtemanche (**"Defendant Courtemanche"**) was employed by Montgomery County as a police officer, and at all times relevant hereto was acting in his official capacity as a Montgomery County police officer.

19.     Sergeant McDannell (**"Defendant McDannell"**) was employed by Montgomery County as a police officer or police detective, and at all times relevant hereto was acting in his or her official capacity as a Montgomery County police officer or Montgomery County police detective.

20.     Officer Laura Andreallo ("**Defendant Andreallo**") was employed by Montgomery County as a police officer, and at all times relevant hereto was acting in her official capacity as a Montgomery County police officer.

## FACTS COMMON TO ALL COUNTS

21.     On the morning of July 26, 2017, Plaintiff was exiting a Shell gas station at 11150 New Hampshire Avenue, Silver Spring, Maryland 20904, in Montgomery County, Maryland.

22.     As Plaintiff exited the gas station, Defendant Serlo approached Plaintiff and immediately demanded that Plaintiff turn around and place his hands on the hood of running Montgomery County police cruiser.

23.     Plaintiff was taken aback, as he had done nothing wrong and could not fathom why Defendant Serlo was asking him to place his hands on the hood of the police cruiser. Plaintiff asked Defendant Serlo for clarification, and refused to place his hands on the vehicle.

24.     Without explanation or justification, Defendant Serlo responded to Plaintiff's request for clarification by grabbing Plaintiff's upper arms and forcing Plaintiff's hands onto the hood of the police cruiser. The police cruiser was still running, and the hood of the vehicle was scalding hot to the touch.

25.     Plaintiff cried out in pain and told Defendant Serlo that his hands were burning. Defendant Serlo blatantly ignored Plaintiff, and proceeded to press Plaintiff's hands more firmly into the hood of the running vehicle. Plaintiff continued to tell Defendant Serlo numerous times that his hands were burning, but Plaintiff's complaints were completely disregarded.

26.     A second officer, Defendant Andreallo, arrived shortly thereafter. Defendant Andreallo persuaded Defendant Serlo to allow Plaintiff to take his hands off the burning hood of the police cruiser.

27.     Plaintiff was detained at the Shell gas station by Defendants Serlo and Andreallo, without justification and without probable cause, for nearly thirty minutes without being told why he was being detained.

28.     During that time, at least seven more officers arrived at the scene, including Defendants Washington, Fox, Courtemanche, and McDannell. After the officers arrived, Plaintiff was searched and photographed without Plaintiff's consent, despite the Defendants having no legally justifiable reason to do so.

29.     More than one hour into the unjustified detention of Plaintiff, one of the officers finally told Plaintiff that the officers were seeking to rule Plaintiff out as a shoplifting suspect. Prior to this point, Plaintiff had been detained without any explanation.

30.     Almost three hours later, a woman, presumably a detective or officer in charge, arrived at the scene and informed the officers that Plaintiff was not the suspected shoplifter. The woman told the officers that Plaintiff could be released immediately.

31.     The officers never charged Plaintiff with any crime or issued any citation.

32.     Plaintiff informed the officers at the scene that he wanted to file a formal complaint about the treatment he was subjected to, as was his right. One of the officers offered to drive Plaintiff to the police station, as the police station was not within walking distance and Plaintiff did not have a car.

33.     When Plaintiff arrived at the Montgomery County Police Department station, Plaintiff was not provided with the requisite paperwork to initiate a formal complaint against the officers. Instead, Plaintiff was escorted into a room that appeared to be an interrogation room.

34.    After Plaintiff was escorted into the room, Defendant Capalupo entered and informed Plaintiff that Plaintiff was now being held for questioning regarding his suspected involvement in a separate armed robbery.

35.    Plaintiff was not given the opportunity to consult with an attorney, and was held in the interrogation room for approximately six hours. During that time, Plaintiff was subjected to various interrogation tactics aimed at inducing a confession from Plaintiff, including, but not limited to, turning the temperature down in the room to the point where Plaintiff was shivering for hours, leaving Plaintiff alone in the room for hours at a time, and escorting Plaintiff in handcuffs when Plaintiff asked to use the bathroom.

36.    These tactics took a psychological toll on Plaintiff. In addition, Plaintiff was both terrified and frustrated, as this was the second false allegation lodged against him by Defendants. Plaintiff feared that he would lose his freedom over an act that Plaintiff did not commit.

37.    During the time that Plaintiff was detained, Montgomery County police detectives acquired and executed a search warrant on Plaintiff's home. The detectives found no evidence to connect Plaintiff to the armed robbery.

38.    The application for the warrant, completed by Defendant Capalupo, described the armed robbery suspect as a heavy-set Black male in his late twenties, with long dreadlocks, who walked with his feet pointed outwards. These characteristics are not unique, and a significant number of Montgomery County residents would fit that description.

39.    Plaintiff was subsequently released, without even an apology.

40.    Following an internal investigation, Defendants Courtemanche and McDannell were ordered to complete corrective counseling. Defendants Washington and Fox were not reprimanded.

41.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, mental pain and suffering, including, but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, loss of society, shame, grief, anxiety and loss of enjoyment of life. Plaintiff also suffered extreme physical pain and distress as a result of the officers' physical manhandling. Plaintiff further suffered, and continues to suffer, economic damages, including, but not limited to, lost time and wages from work and lost earning capacity.

42.     At all times relevant hereto, the individual Defendants acted under color of State law, and within the scope of their employment as Montgomery County police officers and/or Montgomery County police detectives.

43.     All the allegations herein, however worded, are pleaded alternatively as acts of negligence, gross negligence, intent, and/or malice, as determined at trial by the jury in this matter.

## COUNT I — AGAINST ALL DEFENDANTS
### Maryland Declaration of Rights, Articles 24 and 26 — False Imprisonment

44.     Every paragraph not falling under this Count is incorporated herein by reference.

45.     Articles 24 and 26 of the Maryland Declaration of Rights protects citizens against unreasonable search or seizure, including protection against being arrested without probable cause.

46.     At all relevant times, the individual Defendants acted under color of State law, within their capacity and authority as Montgomery County police officers and/or Montgomery County police detectives.

47.     The individual Defendants deprived Plaintiff of his rights under Articles 24 and 26 of the Maryland Declaration of Rights by falsely depriving Plaintiff of his liberty without probable cause during the detention of Plaintiff at the Shell gas station for over three hours.

48.     The individual Defendants further deprived Plaintiff of his rights under Articles 24 and 26 of the Maryland Declaration of Rights by falsely depriving Plaintiff of his liberty without probable cause during the detention of Plaintiff in an interrogation room at the Montgomery County Police Department station for approximately six hours.

49.     When the individual Defendants interrogated Plaintiff during Plaintiff's detention at the Montgomery County Police Department station, using interrogation tactics aimed specifically at inducing a confession, they had no constitutional basis for doing so, as Plaintiff had simply been present at the Shell gas station and had done nothing wrong.

50.     The interrogation techniques unconstitutionally used by the individual Defendants included, but were not limited to, turning the temperature down in the room to the point where Plaintiff was shivering for hours, leaving Plaintiff alone in the room for hours at a time, and escorting Plaintiff in handcuffs when Plaintiff asked to use the bathroom.

51.     Plaintiff was not allowed to leave during the time that he was detained by the individual Defendants at the Shell gas station, or during the time that he was detained in the interrogation room at the Montgomery County Police Department station.

52.     The individual Defendants' actions deprived Plaintiff of his liberty to leave the relevant areas.

53.     Plaintiff did not consent to the individual Defendants' deprivation of Plaintiff's liberty.

54.     The individual Defendants had no legal justification to deprive Plaintiff of his liberty. The individual Defendants had no probable cause to believe that Plaintiff had committed, or was about to commit, a crime, and no arrest warrant had been issued for Plaintiff.

55.     The individual Defendants were acting under the color of State law, in their capacity and authority as Montgomery County police officers and/or Montgomery County police detectives. As such, Defendant Montgomery County is liable for the individual Defendants' conduct.

56.     In the alternative, the individual Defendants' unconstitutional deprivation of Plaintiff's liberty without justification or probable cause constitutes gross negligence, and the individual Defendants are personally liable for their own conduct.

57.     As a direct and proximate result of the individual Defendants' conduct, Plaintiff has suffered, and continues to suffer, mental pain and suffering, including, but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, loss of society, shame, grief, anxiety and loss of enjoyment of life.

58.     Plaintiff also suffered extreme physical pain and distress as a result of the officers' physical manhandling.

59.     Plaintiff further suffered, and continues to suffer, economic damages, including, but not limited to, lost time and wages from work and lost earning capacity.

WHEREFORE, Plaintiff respectfully requests compensatory damages in an amount to be determined at trial, in excess of $30,000, as well as any available punitive damages, in addition to costs, expenses, and attorneys' fees.

## COUNT II — AGAINST ALL DEFENDANTS
### Fourth Amendment — False Imprisonment

60.     Every paragraph not falling under this Count is incorporated herein by reference.

61.     The Fourth Amendment of the Constitution of the United States protects citizens against unreasonable search or seizure, including protection against being imprisoned without probable cause. These constitutional protections are applied to the states and their political

11

subdivisions under the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

62.     At all relevant times, the individual Defendants acted under color of State law, within their capacity and authority as Montgomery County police officers and/or Montgomery County police detectives.

63.     The individual Defendants deprived Plaintiff of his rights under the Fourth Amendment of the Constitution of the United States by falsely depriving Plaintiff of his liberty without probable cause during the detention of Plaintiff at the Shell gas station for over three hours.

64.     The individual Defendants further deprived Plaintiff of his rights under the Fourth Amendment of the Constitution of the United States by falsely depriving Plaintiff of his liberty without probable cause during the detention of Plaintiff in an interrogation room at the Montgomery County Police Department station for approximately six hours.

65.     When the individual Defendants interrogated Plaintiff during Plaintiff's detention at the Montgomery County Police Department station, using interrogation tactics aimed specifically at inducing a confession, they had no constitutional basis for doing so, as Plaintiff had simply been present at the Shell gas station and had done nothing wrong.

66.     The interrogation techniques unconstitutionally used by the individual Defendants included, but were not limited to, turning the temperature down in the room to the point where Plaintiff was shivering for hours, leaving Plaintiff alone in the room for hours at a time, and escorting Plaintiff in handcuffs when Plaintiff asked to use the bathroom.

67.     Plaintiff was not allowed to leave during the time that he was detained by the individual Defendants at the Shell gas station, or during the time that he was detained in the interrogation room at the Montgomery County Police Department station.

12

68.     The individual Defendants' actions deprived Plaintiff of his liberty to leave the relevant areas.

69.     Plaintiff did not consent to the individual Defendants' deprivation of Plaintiff's liberty.

70.     The individual Defendants had no legal justification to deprive Plaintiff of his liberty. The individual Defendants had no probable cause to believe that Plaintiff had committed, or was about to commit, a crime, and no arrest warrant had been issued for Plaintiff.

71.     The individual Defendants' conduct constituted an utter disregard for the established and manifest Fourth Amendment rights of Plaintiff, to the point that Plaintiff was treated as if those rights did not exist, even though the individual Defendants knew, or should have known, of the existence of those rights. In the alternative, the individual Defendants' conduct constituted a knowing and intentional violation of Plaintiff's Fourth Amendment rights.

72.     As a direct and proximate result of the individual Defendants' conduct, Plaintiff has suffered, and continues to suffer, mental pain and suffering, including, but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, loss of society, shame, grief, anxiety and loss of enjoyment of life.

73.     Plaintiff also suffered extreme physical pain and distress as a result of the officers' physical manhandling.

74.     Plaintiff further suffered, and continues to suffer, economic damages, including, but not limited to, lost time and wages from work and lost earning capacity.

WHEREFORE, Plaintiff respectfully requests compensatory damages in an amount to be determined at trial, in excess of $30,000, as well as any available punitive damages, in addition to costs, expenses, and attorneys' fees.

## COUNT III — AGAINST ALL DEFENDANTS
### False Imprisonment

75.     Every paragraph not falling under this Count is incorporated herein by reference.

76.     Plaintiff has a protected property and liberty interest in his freedom, his ability to exercise free will and domain over his person, and his ability to be free from unlawful and excessive police force.

77.     The individual Defendants deprived Plaintiff of numerous protected property and liberty interests.

78.     The individual Defendants had no rational reason to believe that there was probable cause for the deprivation of Plaintiff's liberty, as Plaintiff was simply present at a Shell gas station and had done nothing wrong to give the individual Defendants probable cause to believe that Plaintiff had, or was about to, commit a crime.

79.     The individual Defendants falsely deprived Plaintiff of his liberty without probable cause during the detention of Plaintiff at the Shell gas station for over three hours.

80.     The individual Defendants further falsely deprived Plaintiff of his liberty without probable cause during the detention of Plaintiff in an interrogation room at the Montgomery County Police Department station for approximately six hours.

81.     When the individual Defendants interrogated Plaintiff during Plaintiff's detention at the Montgomery County Police Department station, using interrogation tactics aimed specifically at inducing a confession, they had no rational basis for doing so, as Plaintiff had simply been present at the Shell gas station and had done nothing wrong.

82.     The interrogation techniques unconstitutionally used by the individual Defendants included, but were not limited to, turning the temperature down in the room to the point where

14

Plaintiff was shivering for hours, leaving Plaintiff alone in the room for hours at a time, and escorting Plaintiff in handcuffs when Plaintiff asked to use the bathroom.

83.     Plaintiff was not allowed to leave during the time that he was detained by the individual Defendants at the Shell gas station, or during the time that he was detained in the interrogation room at the Montgomery County Police Department station.

84.     The individual Defendants' actions deprived Plaintiff of his liberty to leave the relevant areas.

85.     Plaintiff did not consent to the individual Defendants' deprivation of Plaintiff's liberty.

86.     The individual Defendants had no legal justification to deprive Plaintiff of his liberty. The individual Defendants had no probable cause to believe that Plaintiff had committed, or was about to commit, a crime, and no arrest warrant had been issued for Plaintiff.

87.     The individual Defendants' deprivation of Plaintiff's liberty was done without probable cause or warrant, demonstrating ill will, improper motivation, and/or evil motive.

88.     As a direct and proximate result of the individual Defendants' conduct, Plaintiff has suffered, and continues to suffer, mental pain and suffering, including, but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, loss of society, shame, grief, anxiety and loss of enjoyment of life.

89.     Plaintiff also suffered extreme physical pain and distress as a result of the officers' physical manhandling.

90.     Plaintiff further suffered, and continues to suffer, economic damages, including, but not limited to, lost time and wages from work and lost earning capacity.

WHEREFORE, Plaintiff respectfully requests compensatory damages in an amount to be determined at trial, in excess of $30,000, as well as any available punitive damages, in addition to costs, expenses, and attorneys' fees.

## COUNT IV — AGAINST ALL DEFENDANTS
### Maryland Declaration of Rights, Articles 24 and 26 — Excessive Force

91.     Every paragraph not falling under this Count is incorporated herein by reference.

92.     Articles 24 and 26 of the Maryland Declaration of Rights protects citizens against unreasonable search or seizure, including protection against excessive force.

93.     At all relevant times, the individual Defendants acted under color of State law, within their capacity and authority as Montgomery County police officers and/or Montgomery County police detectives.

94.     The individual Defendants deprived Plaintiff of his rights under Articles 24 and 26 of the Maryland Declaration of Rights by using excessive force against Plaintiff to further the individual Defendants' unconstitutional detention and interrogation of Plaintiff.

95.     Defendant Serlo deprived Plaintiff of his rights under Articles 24 and 26 of the Maryland Declaration of Rights by grabbing Plaintiff's upper arms, forcing Plaintiff's hands onto the hood of a running police cruiser, and pressing Plaintiff's hands firmly onto the burning hood of the vehicle despite Plaintiff's repeated complaints of pain and pleas to remove his hands from the vehicle.

96.     The individual Defendants deprived Plaintiff of his rights under Articles 24 and 26 of the Maryland Declaration of Rights by utilizing psychologically damaging interrogation techniques without justification, including, but not limited to, turning the temperature down in the room to the point where Plaintiff was shivering for hours, leaving Plaintiff alone in the room for hours at a time, and escorting Plaintiff in handcuffs when Plaintiff asked to use the bathroom.

97.     When the individual Defendants detained and interrogated Plaintiff, they had no constitutional basis for doing so, as Plaintiff had simply been present at a Shell gas station and had done nothing to give the individual Defendants probable cause to believe that Plaintiff had committed, or was about to commit, a crime.

98.     At no time relevant to this action was Plaintiff a threat to the safety of the individual Defendants, Plaintiff himself, or any other person.

99.     Despite the fact that Plaintiff was not a threat to any person's safety, the fact that Plaintiff had done nothing to give the individual Defendants probable cause to believe that Plaintiff had committed, or was about to commit, a crime, and the fact that the individual Defendants had no right to detain and interrogate Plaintiff, the individual Defendants utilized excessively forceful policing tactics to detain and interrogate Plaintiff as described above.

100.     The individual Defendants acted unreasonably in their conduct towards Plaintiff, subjecting him to summary punishment and violating his due process rights. Forcefully pressing an individual's hands to the burning hot hood of a vehicle, refusing to let the individual remove his hands despite the burning, and using psychologically damaging interrogation tactics constitutes excessive and unconstitutional use of force.

101.     Plaintiff was not allowed to leave during the time that he was detained by the individual Defendants at the Shell gas station, or during the time that he was detained in the interrogation room at the Montgomery County Police Department station.

102.     The individual Defendants were acting under the color of State law, in their capacity and authority as Montgomery County police officers and/or Montgomery County police detectives. As such, Defendant Montgomery County is liable for the individual Defendants' conduct.

103.   In the alternative, the individual Defendants' unconstitutional deprivation of Plaintiff's liberty without justification or probable cause constitutes gross negligence, and the individual Defendants are personally liable for their own conduct.

104.   As a direct and proximate result of the individual Defendants' conduct, Plaintiff has suffered, and continues to suffer, mental pain and suffering, including, but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, loss of society, shame, grief, anxiety and loss of enjoyment of life.

105.   Plaintiff also suffered extreme physical pain and distress as a result of the officers' physical manhandling.

106.   Plaintiff further suffered, and continues to suffer, economic damages, including, but not limited to, lost time and wages from work and lost earning capacity.

WHEREFORE, Plaintiff respectfully requests compensatory damages in an amount to be determined at trial, in excess of $30,000, as well as any available punitive damages, in addition to costs, expenses, and attorneys' fees.

## COUNT V — AGAINST ALL DEFENDANTS
### Fourth Amendment — Excessive Force

107.   Every paragraph not falling under this Count is incorporated herein by reference.

108.   The Fourth Amendment of the Constitution of the United States protects citizens against unreasonable search or seizure, including protection against excessive force. These constitutional protections are applied to the states and their political subdivisions under the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

109.   At all relevant times, the individual Defendants acted under color of State law, within their capacity and authority as Montgomery County police officers and/or Montgomery County police detectives.

110.    The individual Defendants deprived Plaintiff of his rights under the Fourth Amendment of the Constitution of the United States by using excessive force against Plaintiff to further the individual Defendants' unconstitutional detention and interrogation of Plaintiff.

111.    Defendant Serlo deprived Plaintiff of his rights under the Fourth Amendment of the Constitution of the United States by grabbing Plaintiff's upper arms, forcing Plaintiff's hands onto the hood of a running police cruiser, and pressing Plaintiff's hands firmly onto the burning hood of the vehicle despite Plaintiff's repeated complaints of pain and pleas to remove his hands from the vehicle.

112.    The individual Defendants deprived Plaintiff of his rights under the Fourth Amendment of the United States by utilizing psychologically damaging interrogation techniques without justification, including, but not limited to, turning the temperature down in the room to the point where Plaintiff was shivering for hours, leaving Plaintiff alone in the room for hours at a time, and escorting Plaintiff in handcuffs when Plaintiff asked to use the bathroom.

113.    When the individual Defendants detained and interrogated Plaintiff, they had no constitutional basis for doing so, as Plaintiff had simply been present at a Shell gas station and had done nothing to give the individual Defendants probable cause to believe that Plaintiff had committed, or was about to commit, a crime.

114.    At no time relevant to this action was Plaintiff a threat to the safety of the individual Defendants, Plaintiff himself, or any other person.

115.    Despite the fact that Plaintiff was not a threat to any person's safety, the fact that Plaintiff had done nothing to give the individual Defendants probable cause to believe that Plaintiff had committed, or was about to commit, a crime, and the fact that the individual Defendants had

no right to detain and interrogate Plaintiff, the individual Defendants utilized excessively forceful policing tactics to detain and interrogate Plaintiff as described above.

116.    The individual Defendants acted unreasonably in their conduct towards Plaintiff, subjecting him to summary punishment and violating his due process rights. Forcefully pressing an individual's hands to the burning hot hood of a vehicle, refusing to let the individual remove his hands despite the burning, and using psychologically damaging interrogation tactics constitutes excessive and unconstitutional use of force.

117.    Plaintiff was not allowed to leave during the time that he was detained by the individual Defendants at the Shell gas station, or during the time that he was detained in the interrogation room at the Montgomery County Police Department station.

118.    The individual Defendants' conduct constituted an utter disregard for the established and manifest Fourth Amendment rights of Plaintiff, to the point that Plaintiff was treated as if those rights did not exist, even though the individual Defendants knew, or should have known, of the existence of those rights. In the alternative, the individual Defendants' conduct constituted a knowing and intentional violation of Plaintiff's Fourth Amendment rights.

119.    As a direct and proximate result of the individual Defendants' conduct, Plaintiff has suffered, and continues to suffer, mental pain and suffering, including, but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, loss of society, shame, grief, anxiety and loss of enjoyment of life.

120.    Plaintiff also suffered extreme physical pain and distress as a result of the officers' physical manhandling.

121.    Plaintiff further suffered, and continues to suffer, economic damages, including, but not limited to, lost time and wages from work and lost earning capacity.

WHEREFORE, Plaintiff respectfully requests compensatory damages in an amount to be determined at trial, in excess of $30,000, as well as any available punitive damages, in addition to costs, expenses, and attorneys' fees.

**COUNT VI — AGAINST DEFENDANT SERLO**
**Battery**

122.    Every paragraph not falling under this Count is incorporated herein by reference.

123.    Plaintiff has a protected property and liberty interest in his freedom, his ability to exercise free will and domain over his person, and his ability to be free from unlawful and excessive police force.

124.    Defendant Serlo deprived Plaintiff of his interest to be free from excessive police force and battery by grabbing Plaintiff's upper arms, forcing Plaintiff's hands onto the hood of a running police cruiser, and pressing Plaintiff's hands firmly onto the burning hood of the vehicle despite Plaintiff's repeated complaints of pain and pleas to remove his hands from the vehicle.

125.    Defendant Serlo's forcible placement of Plaintiff's hands on the burning hood of the police cruiser, and use of force to ensure that Plaintiff could not remove his hands from the burning hood of the vehicle, constituted an unpermitted application of trauma on Plaintiff's body.

126.    Defendant Serlo had no rational reason to believe that there was any justification for the excessive use of force against Plaintiff, as Plaintiff was simply present at a Shell gas station and had done nothing wrong to give Defendant Serlo any reasonable basis to believe that Plaintiff had, or was about to, commit a crime.

127.    At no time relevant to this action was Plaintiff a threat to the safety of the individual Defendants, Plaintiff himself, or any other person.

128.    Despite the fact that Plaintiff was not a threat to any person's safety, the fact that Plaintiff had done nothing to give Defendant Serlo probable cause to believe that Plaintiff had

committed, or was about to commit, a crime, and the fact that Defendant Serlo had no right to detain and interrogate Plaintiff, Defendant Serlo utilized excessively forceful policing tactics to detain and interrogate Plaintiff as described above.

129.   Plaintiff did not consent to Defendant Serlo's use of excessive force.

130.   Defendant Serlo's use of excessive force was done without probable cause or warrant, demonstrating ill will, improper motivation, and/or evil motive.

131.   As a direct and proximate result of the individual Defendants' conduct, Plaintiff has suffered, and continues to suffer, mental pain and suffering, including, but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, loss of society, shame, grief, anxiety and loss of enjoyment of life.

132.   Plaintiff also suffered extreme physical pain and distress as a result of the officers' physical manhandling.

133.   Plaintiff further suffered, and continues to suffer, economic damages, including, but not limited to, lost time and wages from work and lost earning capacity.

WHEREFORE, Plaintiff respectfully requests compensatory damages in an amount to be determined at trial, in excess of $30,000, as well as any available punitive damages, in addition to costs, expenses, and attorneys' fees.

## COUNT VII — AGAINST DEFENDANT MONTGOMERY COUNTY
### Negligent Training, Supervision, and Retention

134.   Every paragraph not falling under this Count is incorporated herein by reference.

135.   Defendant Montgomery County had a duty to ensure Montgomery County Police Department officers were trained to conduct their law enforcement activities within constitutional bounds and a duty to discipline and/or fire officers who failed to conduct their law enforcement activities in an constitutional manner.

136.    Defendant Montgomery County breached its duty to ensure that the individual Defendants were trained in the state and federal constitutional limits of their police authority, which led the individual Defendants to believe that they could unconstitutionally detain Plaintiff for several hours, use excessive force against Plaintiff, and utilize psychologically damaging interrogation tactics against Plaintiff without justification or probable cause.

137.    Defendant Montgomery County breached its duty to discipline officers who violate the constitutional rights of citizens when Defendant Montgomery County failed to properly discipline the individual Defendants, only requiring Defendants Courtemanche and McDannell to complete corrective counseling and failing to discipline the other individual Defendants at all, despite conducting an internal investigation into the violation of Plaintiff's constitutional rights.

138.    As a direct and proximate result of Defendant Montgomery County's conduct, Plaintiff has suffered, and continues to suffer, mental pain and suffering, including, but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, loss of society, shame, grief, anxiety and loss of enjoyment of life.

139.    Plaintiff also suffered extreme physical pain and distress as a result of the officers' physical manhandling.

140.    Plaintiff further suffered, and continues to suffer, economic damages, including, but not limited to, lost time and wages from work and lost earning capacity.

WHEREFORE, Plaintiff respectfully requests compensatory damages in an amount to be determined at trial, in excess of $30,000, as well as any available punitive damages, in addition to costs, expenses, and attorneys' fees.

## COUNT VIII — AGAINST ALL DEFENDANTS
### Gross Negligence

141.    Every paragraph not falling under this Count is incorporated herein by reference.

23

142.    When the individual Defendants detained Plaintiff, forcibly pressed Plaintiff's hands into the burning hot hood of a police cruiser, and utilized psychologically damaging interrogation techniques against Plaintiff, the individual Defendants had no constitutional or legally valid basis for doing so.

143.    When the individual Defendants detained Plaintiff, forcibly pressed Plaintiff's hands into the burning hot hood of a police cruiser, and utilized psychologically damaging interrogation techniques against Plaintiff, the individual Defendants violated Plaintiff's rights under the Fourth Amendment of the United States Constitution and Articles 24 and 26 of the Maryland Declaration of Rights.

144.    The individual Defendants had a manifest duty to abide by the constitutional limits of policing.

145.    The individual Defendants violated that duty to abide by the constitutional limits of policing by violating Plaintiff's rights under the Fourth Amendment of the United States Constitution and Articles 24 and 26 of the Maryland Declaration of Rights.

146.    The individual Defendants could not have reasonably believed that they were within their constitutional authority to seize and use force against Plaintiff on the sole basis that he had exited a Shell gas station and matched a vague, broad description of a suspect. Accordingly, the individual Defendants' seizure of and use of force against Plaintiff constituted an act so utterly indifferent to the rights of Plaintiff that the individual Defendants acted as if those constitutional rights did not exist.

147.    In the alternative, the individual Defendants' seizure and use of force against Plaintiff on the sole basis that he had exited a Shell gas station and matched a vague, broad description of a suspect constituted an intentional failure to perform a manifest duty and abide by

the constitutional limits of policing in reckless disregard of the consequences as affecting the life of another, and evinced a thoughtless disregard of the consequences to Plaintiff's life without the exertion of any effort to avoid those consequences.

148.    As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered, and continues to suffer, mental pain and suffering, including, but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, loss of society, shame, grief, anxiety and loss of enjoyment of life.

149.    Plaintiff also suffered extreme physical pain and distress as a result of the officers' physical manhandling.

150.    Plaintiff further suffered, and continues to suffer, economic damages, including, but not limited to, lost time and wages from work and lost earning capacity.

WHEREFORE, Plaintiff respectfully requests compensatory damages in an amount to be determined at trial, in excess of $30,000, as well as any available punitive damages, in addition to costs, expenses, and attorneys' fees.

## COUNT IX — AGAINST ALL DEFENDANTS
### Negligence

151.    Every paragraph not falling under this Count is incorporated herein by reference.

152.    When the individual Defendants detained Plaintiff, forcibly pressed Plaintiff's hands into the burning hot hood of a police cruiser, and utilized psychologically damaging interrogation techniques against Plaintiff, the individual Defendants had no constitutional or legally valid basis for doing so.

153.    When the individual Defendants detained Plaintiff, forcibly pressed Plaintiff's hands into the burning hot hood of a police cruiser, and utilized psychologically damaging interrogation techniques against Plaintiff, the individual Defendants violated Plaintiff's rights

under the Fourth Amendment of the United States Constitution and Articles 24 and 26 of the Maryland Declaration of Rights.

154.    The individual Defendants had a manifest duty to abide by the constitutional limits of policing.

155.    The individual Defendants violated that duty to abide by the constitutional limits of policing by violating Plaintiff's rights under the Fourth Amendment of the United States Constitution and Articles 24 and 26 of the Maryland Declaration of Rights.

156.    As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered, and continues to suffer, mental pain and suffering, including, but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, loss of society, shame, grief, anxiety and loss of enjoyment of life.

157.    Plaintiff also suffered extreme physical pain and distress as a result of the officers' physical manhandling.

158.    Plaintiff further suffered, and continues to suffer, economic damages, including, but not limited to, lost time and wages from work and lost earning capacity.

WHEREFORE, Plaintiff respectfully requests compensatory damages in an amount to be determined at trial, in excess of $30,000, as well as any available punitive damages, in addition to costs, expenses, and attorneys' fees.

## **JURY DEMAND**

Plaintiff demands a jury trial as to all claims so triable.

26

Respectfully submitted,

HANSEL LAW, P.C.

Cary J. Hansel (CPF No. 9912150020)
cary@hansellaw.com
Ashton Zylstra (CPF No. 1712140283)
azylstra@hansellaw.com
2514 North Charles Street
Baltimore, MD 21218
Tel: (301) 461-1040
Fax: (443) 451-8606
*Counsel for Plaintiff*

27