**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| AARON IFALOLA TAYLOR, | | |
| | * | |
| **Plaintiff,** | | |
| v. | * | **Case No.: GJH-20-3143** |
| | | |
| MONTGOMERY COUNTY, | * | |
| MARYLAND, *et al.*, | | |
| | * | |
| **Defendants.** | | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

Plaintiff Aaron Ifatola Taylor brings this action against Defendants Montgomery County, Thomas Fox, Timothy Serlo, Michael McDannell, Christina Courtemanche, Laura Andreallo, Paris Capalupo, and Marquetta Washington, pursuant to 42 U.S.C. § 1983, alleging false imprisonment and excessive force in violation of the Fourth Amendment as well as various state law claims. ECF Nos. 3 & 17. Pending before the Court is Defendants' Motion to Dismiss. ECF No. 25.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Defendants' Motion to Dismiss is granted, in part, and denied, in part.

**I.     BACKGROUND[2]**

On the morning of July 26, 2017, Plaintiff was exiting a Shell gas station when Officer Timothy Serlo intercepted him. ECF No. 17 ¶¶ 21–22. Defendant Serlo demanded that Plaintiff

---

[1] Also pending are several Joint Motions for Extensions, which the Court grants. ECF No. 7; ECF No. 26; ECF No. 28.

[2] Unless stated otherwise, all facts are taken from Plaintiff's Amended Complaint or documents attached to and relied upon in the Amended Complaint and are accepted as true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

turn around and place his hands on the hood of a running police cruiser. *Id.* ¶ 22. Plaintiff alleges that he did not know why Defendant Serlo was asking that he put his hands on the vehicle and refused, asking for more information. *Id.* ¶ 23. Defendant Serlo then, without explanation, grabbed Plaintiff's upper arms and forced his hands onto the hood of the police car, which was "scalding hot" since it was still running. *Id.* ¶ 24. Plaintiff alleges that he cried out in pain and repeatedly told Defendant Serlo that his hands were burning, but Defendant Serlo ignored Plaintiff and only pressed his hands more firmly into the hood. *Id.* ¶ 25. Shortly thereafter, a second officer, Officer Laura Andreallo, arrived and persuaded Defendant Serlo to let Plaintiff remove his hands from the police cruiser. *Id.* ¶ 26.

Plaintiff was detained for a period of time without explanation,[3] during which at least seven more officers arrived on the scene, including Thomas Fox, Michael McDannell, Christina Courtemanche, and Marquetta Washington. *Id.* ¶¶ 27–28. Plaintiff was then searched and photographed without his consent. *Id.* ¶ 28. Eventually, one of the officers told Plaintiff that they were detaining him in order to rule him out as a shoplifting suspect. *Id.* ¶ 29. Almost three hours later, a female officer arrived at the scene and informed the others that Plaintiff was not the suspected shoplifter and could be released. *Id.* ¶ 30. Plaintiff alleges that, following an internal investigation, Defendants Courtemanche and McDannell were ordered to complete corrective counseling while Defendants Washington and Fox were not reprimanded. *Id.* ¶ 40.

Plaintiff informed the officers at the scene that he wanted to file a formal complaint about the treatment he received. *Id.* ¶ 32. Because the police station was not within walking distance, and Plaintiff did not have a car, one of the officers offered to drive Plaintiff to the station. *Id.*

---

[3] At one point, the Amended Complaint alleges that Plaintiff was detained for nearly thirty minutes without explanation, *id*. ¶ 27, and at another point the Amended Complaint alleges it was more than an hour before he was given an explanation, *id*. ¶ 29.

When Plaintiff arrived, instead of being provided the paperwork to file a formal complaint, Plaintiff was escorted into what appeared to be an interrogation room. *Id.* ¶ 33. Another officer, Detective Paris Capalupo, entered the room and told Plaintiff he was being held for questioning regarding his suspected involvement in a separate armed robbery. *Id.* ¶ 34. Plaintiff was held in the room for approximately six hours. *Id.* ¶ 35. During that time, he was not given the opportunity to consult with an attorney. *Id.* Plaintiff was also subjected to "various interrogation tactics aimed at inducing a confession," including turning the temperature down for hours, leaving Plaintiff alone for hours at a time, and escorting Plaintiff in handcuffs when he asked to use the bathroom. *Id.*

Finally, while Plaintiff was detained, Defendant Capalupo applied for a warrant to search Plaintiff's house. *Id.* ¶¶ 37–38. The application for the warrant described the armed robbery suspect as "a heavy-set Black male in his late twenties, with long dreadlocks, who walked with his feet pointed outwards." *Id.* ¶ 38. Montgomery County police detectives executed the search warrant on Plaintiff's home but found no evidence to connect Plaintiff to the armed robbery. *Id.* ¶ 37. Plaintiff was then released. *Id.* ¶ 39.

Plaintiff filed suit against Montgomery County and seven officers in the Circuit Court for Montgomery County on September 23, 2020. ECF No. 1 at 1; ECF No. 1-2. On October 28, 2020, Defendants removed the action to this Court. ECF No. 1. Plaintiff filed an Amended Complaint on November 12, 2020, alleging false imprisonment against all Defendants under the Fourth Amendment (Count I), under Articles 24 and 26 of the Maryland Declaration of Rights (Count II), and as a common law tort (Count III); excessive force against all Defendants under the Fourth Amendment (Count IV) and Articles 24 and 26 of the Maryland Declaration of Rights (Count V); battery against Defendant Serlo (Count VI); negligent training, supervision, and

retention against Defendant Montgomery County (Count VII); gross negligence and negligence

against all Defendants (Counts VIII and IX, respectively); and violation of his Fourth

Amendment rights under *Monell* against Defendant Montgomery County (Count X). Defendants

filed a Motion to Dismiss on November 30, 2020. ECF No. 25. Plaintiff filed a response in

opposition on December 28, 2020, ECF No. 27, and Defendants replied on February 5, 2021,

ECF No. 29.

## II.    STANDARD OF REVIEW

Defendants move to dismiss this action for failure to state a claim under Federal Rule of

Civil Procedure 12(b)(6). "A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of

the claims pled in a complaint." *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*,

918 F.3d 312, 317 (4th Cir. 2019). To overcome a Rule 12(b)(6) motion, a complaint must allege

sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when "the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id*.

In evaluating the sufficiency of the plaintiff's claims, "a court 'must accept as true all of

the factual allegations contained in the complaint,' and must 'draw all reasonable inferences

[from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir.

2019) (alteration in original) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637

F.3d 435, 440 (4th Cir. 2011)). However, the complaint must contain more than "legal

conclusions, elements of a cause of action, and bare assertions devoid of further factual

enhancement[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th

Cir. 2009). Accordingly, in ruling on a motion brought under Rule 12(b)(6), a court "separat[es]

4

the legal conclusions from the factual allegations, assum[es] the truth of only the factual allegations, and then determin[es] whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012) (quoting *Iqbal*, 556 U.S. at 1949–50).

Defendants challenge Plaintiff's practice throughout the Amended Complaint of referencing the officer Defendants as a group, rather than specifying each individual's contributions to the alleged misconduct. *See* ECF No. 25-1 at 5.[4] Plaintiff's Amended Complaint must contain specific allegations against each Defendant in order to put Defendants on adequate notice of the claims against them. *See Classen Immunotherapies, Inc. v. Biogen IDEC*, 381 F. Supp. 2d 452, 455 (D. Md. 2005) (dismissing claims where the complaint failed to "delineate the particular acts of infringement attributable to each Defendant" and thus did "not provide facts sufficient to inform" the defendant of the basis for the plaintiff's claims); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("[I]t is particularly important in [§ 1983 cases against multiple government actors in their individual capacities] that the complaint make clear exactly *who* is alleged to have done *what to whom*, to provide each individual with fair notice as to the basis of the claims against him or her[.]" (emphasis in original)); *Horton v. City of Rockford*, No. 18 C 6829, 2019 WL 3573566, at *3 (N.D. Ill. Aug. 6, 2019) ("Group pleading that refers to 'Defendants' collectively is sufficient under Rule 8 when a plaintiff provides enough detail about the nature of the allegations to put each defendant on fair notice of the claims."). Where the plaintiff "sufficiently allege[s] the personal involvement or acquiescence of each of the

---

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

defendant officers," the plaintiff will be able to overcome a motion to dismiss. *See Weston v. City of Philadelphia*, No. CV 17-2432, 2017 WL 3722435, at *4 (E.D. Pa. Aug. 29, 2017).

## III.   DISCUSSION

### A.   Constitutional Claims

Plaintiff alleges Defendants violated his rights under the Fourth Amendment to the United States Constitution. Pursuant to 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects or causes to be subjected, any citizen of the United States or other person within jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1979) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)). To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct." *Johnson v. Baltimore Police Department*, 2020 WL 1169739, Civ. A. No. ELH-19-00698 at *11 (D. Md. March 10, 2020) (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Thus, there is no vicarious liability under § 1983.

Here, Plaintiff allege that Defendants, while acting under color of state law, violated his Fourth Amendment rights through false imprisonment and the use of excessive force.

### 1.   False Imprisonment

A claim of false imprisonment in violation of the Fourth Amendment requires a "deprivation of the liberty of another without his consent and without legal justification."

*Bumgardner v. Taylor*, Civ. A. No. GLR-18-1438, 2019 WL 4115414, at *6 (D. Md. August 29, 2019) (quoting *Shiflett v. I.T.O. Corp. of Baltimore*, No. 99-1379202, F.3d 260, 2000 WL 14214, at *4 (4th Cir. Jan. 10, 2000) (table)); *see also Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir. 2001) ("[F]alse arrest and false imprisonment claims . . . are essentially claims alleging a seizure of the person in violation of the Fourth Amendment."). However, "there is no cause of action for [false imprisonment] under section 1983 unless the arresting officer lacked probable cause." *Harrison v. Deane*, 426 F. App'x 175, 181 (4th Cir. 2011) (quoting *Street v. Surdyka*, 492 F.2d 368, 372–73 (4th Cir. 1974)); *see also Khan v. Howard Cty., Maryland*, No. CV CCB-17-0190, 2017 WL 3334857, at *5 (D. Md. Aug. 3, 2017) ("To state a claim for false imprisonment under § 1983, a plaintiff must show he was arrested without probable cause."). "Probable cause is determined by a 'totality-of-the-circumstances' approach." *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). The inquiry "turns on two factors: 'the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'" *Id.* (quoting *Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016)). Courts "look to the information available to the officer on the scene at the time" and "apply an objective test to determine whether a reasonably prudent officer with that information would have thought that probable cause existed for the arrest." *Hupp v. Cook*, 931 F.3d 307, 318 (4th Cir. 2019) (citing *Graham*, 831 F.3d at 185). Here, Plaintiff claims he was falsely imprisoned on two separate occasions on July 26, 2017, first at a gas station and second at the police station.

### a. Gas Station

Although Plaintiff's Amended Complaint does, at times, refer to Defendants as a collective, the Amended Complaint makes sufficient allegations as to each individual

Defendant's involvement in the alleged false imprisonment of Plaintiff at the gas station. Plaintiff alleges that as he was exiting a Shell gas station, Defendant Serlo approached him and demanded that he place his hands on his police cruiser. ECF No. 17 ¶¶ 21, 22. Shortly thereafter, Defendant Andreallo arrived as well. *Id*. ¶ 26. Plaintiff alleges that Serlo and Andreallo detained him without justification and without probable cause for thirty minutes without telling Plaintiff why he was being detained. *Id*. ¶ 27. Seven more officers later arrived at the scene, including Defendants Washington, Fox, Courtemanche, and McDannell, at which point he was searched and photographed, again, without justification. *Id*. ¶ 28. Plaintiff was eventually told that officers were attempting to rule him out as a shoplifting suspect. *Id*. ¶ 29. After three hours, another officer arrived and informed the officers Plaintiff was not the suspect and that he could be released. *Id*. ¶ 30. In sum, Plaintiff alleges that Defendants Serlo and Andreallo initially detained him, and Defendants Washington, Fox, Courtemanche, and McDannell later arrived at the scene as the unjustified detention continued for hours more.

Defendants argue that, based on *Carter v. Jess*, 179 F. Supp. 2d 534 (D. Md. 2001), Defendants Washington, Fox, Courtemanche, and McDannell should not be held liable because they were not involved in the initial decision to detain Plaintiff, ECF No. 29 at 2–3. However, *Carter* is distinguishable. In *Carter*, an officer saw two other officers attempting to handcuff the plaintiff, who was resisting, and he immediately assisted without knowing the basis for arresting the plaintiff. 179 F. Supp. 2d at 544–45; *see also Fernandes v. Montgomery Cty., Md.*, No. AW-10-CV-752, 2012 WL 1664086, at *3 (D. Md. May 10, 2012) (no liability where an officer responded to another officer's emergency call for assistance and, when he arrived at the scene, helped "to subdue a resisting individual"). That rushed scenario, involving a detainee who was actively resisting arrest, is unlike the present case, where (i) the additional officers arrived to find

Plaintiff already detained, and he was not resisting, and (ii) the additional officers assisted in Plaintiff's detention for hours after their arrival.

Defendants also argue that the later issuance of a search warrant to search Plaintiff's home precludes Plaintiff's claims of false imprisonment. ECF No. 25-1 at 8. However, a search warrant related to an alleged armed robbery, issued after Plaintiff's detention at the gas station and in relation to a different crime, does not show there was probable cause for Plaintiff's detention at the gas station.[5]

Plaintiff has thus alleged facts sufficient to survive Defendants' Motion to Dismiss the false imprisonment claims.[6]

### b. Police Station

Plaintiff also alleges that, soon after the detention at the gas station, he was again unlawfully detained, this time at a police station. Specifically, Plaintiff alleges that he was taken to the police station to file a complaint but that he was instead escorted into an interrogation room where Defendant Capalupo informed him he was being questioned in relation to a separate armed robbery. *Id*. ¶¶ 32–34. While he was there, detectives acquired a search warrant for his home but found no evidence connecting him to the robbery. *Id.* ¶ 37. The warrant gave a general description of the suspect that could have fit a significant number of Montgomery County

---

[5] Defendants further argue that because the search warrant establishes cause for the detention at the gas station, Plaintiff's battery claim stemming from the use of force in conjunction with that detention is barred. ECF No. 25-1 at 8–9 (citing *Williams v. Prince George's Cty.*, 112 Md. App. 526, 554, 685 A.2d 884, 898 (1996) ("False imprisonment, false arrest, and assault and battery (when the force used is not excessive) can only occur when there is no legal authority or justification for the arresting officer's actions.")). However, because the Court finds Plaintiff has sufficiently alleged there was no legal justification for his detention at the gas station, Plaintiff's battery claim will not be dismissed on that basis. Plaintiff's common law false imprisonment claim survives for the same reasons.

[6] Because, under Maryland law, Article 26 of the Maryland Declaration of Rights is construed *in pari materia* with the Fourth Amendment, *Richardson v. McGriff*, 361 Md. 437, 762 A.2d 48, 56 (2000), the Court considers the federal and state constitutional claims for false imprisonment together.

residents. *Id*. ¶ 38. Defendants argue that the acquisition of the search warrant is sufficient to establish that the officers had probable cause to detain him for the robbery. ECF No. 25-1 at 8. It does not. While the Court could make the inference that there was probable cause for the arrest given that Defendant Capalupo was able to obtain a search warrant for Plaintiff's home, at the Motion to Dismiss stage, inferences are drawn in Plaintiff's favor, not Defendants'.

Moreover, although Defendants point to caselaw to support its contention that a resident of a premises being searched may be detained anywhere, *United States v. Abraham*, 213 F. App'x 240, 248 (4th Cir. 2007) ("On these facts, we find the actual location of Abraham's detention inconsequential."), the Supreme Court has since clarified that the "*Summers* rule," which allows for "detentions incident to the execution of a search warrant," is subject to a "spatial constraint defined by the immediate vicinity of the premises," *Bailey v. United States*, 568 U.S. 186, 201 (2013). Here, Plaintiff was not being detained in the immediate vicinity of the premises while a search was being conducted but rather at a police station. Accordingly, the search of Plaintiff's residence does not, without more, justify his detention.

### 2. Excessive Force

At this stage, Defendants do not challenge the excessive force claims against Defendant Serlo stemming from the use of force at the gas station. ECF No. 25-1 at 10 n.6. However, Defendants contest the excessive force claim against Defendant Capalupo for the allegedly extreme interrogation tactics at the police station. *Id.* at 10. Defendants contend that, because the interaction occurred post-arrest, the alleged use of force is properly analyzed under—and fails to meet—the standard applicable to Fourteenth Amendment excessive force claims, not the standard for Fourth Amendment violations. *Id.* Indeed, although Plaintiff does not allege that he had been formerly arrested at the time of the interrogation, because he had been detained, the

Fourteenth Amendment applies. *See Wilson v. Gaff*, No. CV RDB-19-2587, 2021 WL 927382, at

*5 (D. Md. Mar. 11, 2021) ("Here, because Plaintiff alleges that he had been handcuffed and was

effectively arrested when Defendant allegedly attacked him, the Fourteenth Amendment claim is

analyzed as a claim of post-arrest excessive force against an arrestee."); *Karn v. PTS of Am.,*

*LLC*, No. CV GJH-16-3261, 2017 WL 4162251, at *7 (D. Md. Sept. 19, 2017) ("[O]nce the

single act of detaining an individual has been accomplished, the [Fourth] Amendment ceases to

apply. Claims regarding the subsequent use of excessive force and conditions of confinement are

therefore governed by the Fourteenth Amendment's Due Process Clause." (second alteration in

original) (internal citations and quotation marks omitted)); *see also Orem v. Rephann*, 523 F.3d

442, 446 (4th Cir. 2008), *abrogated on other grounds by Kingsley v. Hendrickson*, 575 U.S. 389

(2015) (noting that "[t]he point at which Fourth Amendment protections end and Fourteenth

Amendment protections begin is often murky" but finding that where the plaintiff had been

arrested, but not formally charged, and excessive force was allegedly used during her transport to

jail, the Fourteenth Amendment applied). However, given the Supreme Court's extension of the

Fourth Amendment's objective reasonableness standard to the Fourteenth Amendment context in

*Kingsley v. Hendrickson*, 575 U.S. 389 (2015), that distinction is now less significant to the

Court's analysis. [7]

---

[7] *See Brooks v. Johnson*, 924 F.3d 104, 114 (4th Cir. 2019) ("[T]he Supreme Court has extended the Fourth
Amendment's objective reasonableness standard to excessive force claims by pre-trial detainees."); *Patel v. Lanier
Cty. Georgia*, 969 F.3d 1173, 1182 (11th Cir. 2020) ("After *Kingsley*, the Fourteenth Amendment's standard is
analogous to the Fourth Amendment's."); *McCowan v. Morales*, 945 F.3d 1276, 1283 (10th Cir. 2019) ("The
distinction between arrestee and pretrial detainee is less important in this case because the Supreme Court has now
clarified that only the objective (and not a subjective) standard applies to a pretrial detainee's Fourteenth
Amendment excessive-force claim. . . . Thus, the same objective standard now applies to excessive-force claims
brought under either the Fourth or the Fourteenth Amendment." (internal citation omitted); *Miranda-Rivera v.
Toledo-Davila*, 813 F.3d 64, 70 (1st Cir. 2016) ("Since *Kingsley* has extended the objective reasonableness standard
for use of force from the arrest stage through the probable cause hearing, whether the Fourth or Fourteenth
Amendment standard applies presents less of a problem in cases like this one than before.").

To succeed on an excessive force claim brought under the Fourteenth Amendment, a plaintiff "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 575 U.S. at 397; *see also Coney v. Davis*, 809 F. App'x 158, 159 (4th Cir. 2020); *Dilworth v. Adams*, 841 F.3d 246, 255 (4th Cir. 2016).[8] The Supreme Court has instructed:

> [c]onsiderations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397.

Plaintiff's claims—that Defendant Capalupo turned the temperature down in the interrogation room, left Plaintiff alone for hours at a time, and escorted Plaintiff to the bathroom in handcuffs—do not sufficiently allege a Fourteenth Amendment violation. First, while "[u]nnecessary detention in extreme temperatures" may, in some cases, amount to a constitutional violation, *Miller v. Sanilac Cty.*, 606 F.3d 240, 251 (6th Cir. 2010) (quoting *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002)), Plaintiff does not allege sufficient facts to state an excessive force claim here. Namely, Plaintiff alleges he was kept in the cold cell for a relatively brief period of time, does not allege that he complained about the conditions, and does not allege that he suffered any harm as a result of his detention at that temperature. *Cf. e.g.*, *id.* (finding no Fourth Amendment violation where the plaintiff claimed "that he was so cold that he was visually shaking and passed out" but "he had recently been at an outdoor event," admitted he

---

[8] Maryland courts have generally construed Article 24 of the Maryland Declaration of Rights consistent with the Fourteenth Amendment. *See Okwa v. Harper*, 360 Md. 161, 203, 757 A.2d 118, 141 (2000); *Doe v. Dep't of Pub. Safety & Corr. Servs.*, 185 Md. App. 625, 636, 971 A.2d 975, 982 (Md. Ct. Spec. App. 2009). Accordingly, the Court considers Plaintiff's federal and state constitutional claims for excessive force together.

had not told the officers he was cold, "indicated during the booking process that he did not need medical attention and described his present physical condition as good, and does not appear to have presented any notable symptoms during a medical evaluation a week later for hypothermia"); *Little v. Gore*, 148 F. Supp. 3d 936, 952 (S.D. Cal. 2015) (finding no excessive force claim where the plaintiff alleged he was handcuffed outside in "very cold temperatures" while only wearing shorts and a t-shirt but the complaint did not allege "how cold it was outside, how long [the plaintiff] remained outside, whether the Defendant Officers were subjected to the same temperatures, whether or not [the plaintiff] informed the Defendant Officers that she was cold, whether [the plaintiff] needed medical attention as a result of being in the cold, or how [the plaintiff] was injured as a result of being seated in such a condition").[9]

Second, merely handcuffing a detainee during trips to the bathroom, without more, is not excessive. Plaintiff has not alleged the handcuffs were overly tight or otherwise caused him injury. *Cf. Deavers v. Vasquez*, 57 F. Supp. 3d 599, 607–08 (E.D. Va. 2014) (noting that, even where the plaintiff alleges the handcuffs were too tight, the Fourth Circuit will not necessarily find there was excessive force); *see also Jensen v. Phillips*, No. CV WMN-16-1175, 2017 WL 121772, at *4 (D. Md. Jan. 12, 2017) (finding, where "the only physical force that Plaintiff asserted was actually employed was his being handcuffed," the plaintiff had not alleged an excessive force claim, as "the handcuffing of an arrestee 'is so insubstantial that it cannot as a matter of law support [a] claim under either the Fourth Amendment or the Fourteenth'" (quoting *Carter v. Morris*, 164 F.3d 215, 219 n.3 (4th Cir. 1999)). Plaintiff has also not alleged that he complained that the handcuffs were causing him pain. *See Deavers*, 57 F. Supp. 3d at 607

---

[9] Given the expansion of the "objectively reasonable" standard from the Fourth Amendment context to the Fourteenth Amendment context, *see supra* note 7, the Court relies on cases addressing Fourth Amendment violations rather than cases addressing alleged Fourteenth Amendment violations under the now-outdated standard.

(noting that even Circuits recognizing excessive force claims for tight handcuffs require a showing that the plaintiff complained); *see also Hewitt v. Bennett*, No. CV 6:19-1927-JFA-KFM, 2020 WL 3420756, at *4 (D.S.C. June 22, 2020) (evaluating a "tight handcuffing" claim based on (1) whether the handcuffs were unreasonably tight, (2) whether the defendants ignored the plaintiff's pleas that they were too tight, and (3) the degree of injury caused). Moreover, that Plaintiff was handcuffed only briefly during transport to the restroom suggests the use of handcuffs was related to a legitimate security interest rather than punishment. *See Bratcher v. Hampton Roads Reg'l Jail*, No. 1:16CV224 (AJT/IDD), 2018 WL 1037052, at *4 (E.D. Va. Feb. 21, 2018), *aff'd*, 738 F. App'x 793 (4th Cir. 2018) (finding use of handcuffs when transporting segregated inmates did not amount to punishment in violation of the Fourteenth Amendment). Because the facts in the Amended Complaint do not indicate that the brief periods in which Plaintiff was handcuffed were objectively unreasonable, the Court does not find they amount to a Fourteenth Amendment violation.

Finally, the Court is not aware of any authority finding that leaving a detainee alone for periods of time over the course of a six-hour detainment constitutes a Fourteenth Amendment violation. Plaintiff has not alleged facts showing how such conduct was injurious or objectively unreasonable. Accordingly, Plaintiff's excessive force claims against Defendant Capalupo will be dismissed.

### 3. Qualified Immunity

Defendants further argue that, to the extent Plaintiff has sufficiently alleged Defendants Washington, Fox, Courtemanche, McDannell, Andreallo, and Capalupo violated his constitutional rights, those Defendants are nevertheless protected by the doctrine of qualified immunity. ECF No. 25-1 at 12. In order for qualified immunity to apply, Defendants must show

either that the officer did not violate a constitutional right or that they did not violate a right that was clearly established. *See, e.g.*, *Merchant v. Bauer*, 677 F.3d 656, 662 (4th Cir. 2012). The Court has already determined that Plaintiff's rights were not violated by Defendant Capalupo's allegedly extreme interrogation techniques. However, having determined that Plaintiff has sufficiently alleged that Defendants violated Plaintiff's constitutional rights by twice detaining him without adequate cause, the Court will proceed to determine whether those rights were clearly established.

"The right at issue here is not the general right to be free from arrest without probable cause, but rather the right to be free from arrest under the particular circumstances of the case." *Graham v. Gagnon*, 831 F.3d 176, 182 (4th Cir. 2016). Thus, qualified immunity protects the officers from claims of unlawful detention "if it would have been clear to reasonable officers in their position that they lacked probable cause to arrest" Plaintiff. *Id.* Here, Plaintiff alleges that he was detained for three hours at the gas station, and eventually "one of the officers informed Plaintiff that they were seeking to rule him out as a shoplifting suspect." ECF No. 17 ¶¶ 5, 30, 47. Plaintiff alleges that his detention was without justification or probable cause. *Id.* ¶ 47. Additionally, Plaintiff alleges that he was detained as an armed robbery suspect for six hours at the police station without probable cause. *Id.* ¶¶ 7, 35, 48. Plaintiff further alleges that Defendants obtained a search warrant for his home and searched it but found no evidence connecting him to the armed robbery. *Id.* ¶ 37. The application for the warrant allegedly "described the armed robbery suspect as a heavy-set Black male in his late twenties, with long dreadlocks, who walked with his feet pointed outwards." *Id.* ¶ 38. That Plaintiff fit that general description would not alone support a reasonable officer's finding of probable cause. *See United States v. Williams*, 10 F.3d 1070, 1074 (4th Cir. 1993) ("[T]he information acted upon by the

police must not apply to any number of persons and must reasonably single out the person or people to be arrested."); *United States v. Fisher*, 702 F.2d 372, 379 (2d Cir. 1983) (finding no probable cause where the "general description" that the officer had of robbers "was equally applicable to a number of individuals likely to be in the area").

Discovery in this case may later provide further information as to what led to Defendants' suspicions that motivated the detentions at the gas station and at the police station. And a review of that evidence at a later stage may cause the Court to find that probable cause existed or that it was reasonable for Defendants to believe probable cause existed. At this stage, however, Plaintiff, who may not be privy to the evidence that was in Defendants' possession, has sufficiently alleged that the detentions were clearly without probable cause. Accordingly, based on the allegations in the Amended Complaint, Defendants are not entitled to qualified immunity on the false imprisonment claims.

### B. State Law Claims

#### 1. Negligence

Defendants first argue for the dismissal of Plaintiff's negligence claim on the basis that it is duplicative of his constitutional claims, pointing to two cases as support: *Mejica v. Montgomery Cty.*, Md., No. 8:12-CV-00823-AW, 2013 WL 326734 (D. Md. Jan. 28, 2013), and *Ghazzaoui v. Anne Arundel Cty., Md.*, No. ELH-14-1410, 2014 WL 3973037 (D. Md. Aug. 11, 2014). ECF No. 25-1 at 14–15. But both cases are inapposite. In both *Mejica* and *Ghazzaoui*, the plaintiffs brought purported state common law "excessive force" claims, and the defendants argued for dismissal because (1) there is no cause of action in Maryland for excessive force, and (2) the claims were duplicative of the plaintiffs' excessive force claims brought under the Maryland Declaration of Rights and U.S. Constitution. *See* 2013 WL 326734, at *5; 2014 WL

3973037, at *6. The courts found the defendants' arguments well-taken in both cases and dismissed the claims. *See* 2013 WL 326734, at *5; 2014 WL 3973037, at *6. Here, there is no question that negligence is a cause of action under Maryland common law. Moreover, claims based on overlapping facts need not be dismissed as duplicative, and plaintiffs can allege alternate theories of liability based on common facts at this stage of litigation.

Defendants also argue that public official immunity protects the officers from liability for negligence unless they acted with malice, ECF No. 25-1 at 15 (citing *Williams v. Prince George's County*, 112 Md. App. 526, 549–50, 685 A.2d 884, 896 (1996)), and that negligence and malice cannot be alleged simultaneously for the same conduct, *id.* (citing *Mejica*, 2013 WL 326734, at * 6). Defendants' understanding of the law would bar all negligence claims brought against public officials and render the "without malice" requirement for public official immunity meaningless. To the contrary, cases decided by Maryland courts appear to contemplate the possibility of a negligence claim overcoming public official immunity, which would necessarily involve a finding of malice. *See, e.g.*, *Williams*, 112 Md. App. at 550–51, 685 A.2d at 896 (analyzing whether officers acted with malice to decide whether immunity applied to negligence claim); *Hines v. French*, 157 Md. App. 536, 564–65, 852 A.2d 1047, 1063 (2004) (finding summary judgment was not appropriate where question of fact remained regarding whether officer acted with malice and thus was entitled to immunity for negligence claim). Plaintiff's negligence claim will thus not be dismissed on this basis.

Defendants also argue that Plaintiff has failed to allege malice. ECF No. 29 at 7. "Malice has been defined as the performance of an act without legal justification or excuse and with an evil or rancorous motive influenced by hate, the purpose of which is to deliberately and wilfully injure another." *Williams*, 112 Md. App. at 550, 685 A.2d at 896. "Actual malice does not

always have to be shown with specificity; it can be inferred." *Thacker v. Hyattsville*, 135 Md. App. 268, 307, 762 A.2d 172 (2000) (quoting *Leese v. Baltimore County*, 64 Md. App. 442, 480, 497 A.2d 159 (1985)). Maryland courts "frequently reject, however, attempts to rely on bare allegations that a particular act raises an inference of malice." *Hines v. French*, 157 Md. App. 536, 563, 852 A.2d 1047, 1062 (2004).

That Defendant Serlo allegedly pressed Plaintiff's hands more firmly into the hot car hood after Plaintiff complained he was being burned suggests, drawing inferences in Plaintiff's favor, an "an evil or rancorous motive." However, Plaintiff has not alleged facts from which the Court could infer that the other defendants acted with malice. Accordingly, Plaintiff's negligence claim is dismissed against the officer defendants except as to Defendant Serlo and his use of force.

### 2. Gross Negligence

Finally, Plaintiff brings a gross negligence claim against all Defendants. *See* ECF No. 17 ¶¶ 141–50. Under Maryland law, gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Barbre v. Pope*, 402 Md. 157, 935 A.2d 699, 717 (Md. 2007) (quoting *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 635, 495 A.2d 838, 846 (1985)). An individual acts with gross negligence when that person "inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Id.* (quoting *Liscombe*, 303 Md. at 635, 495 A.2d at 846). Additionally, "malice is 'something beyond' gross negligence[.]" *Id.* at 714 (quoting *Shoemaker v. Smith*, 353 Md. 143, 164, 725 A.2d 549, 560 (1999)).

18

The Maryland Court of Appeals has held that the principle of objective reasonableness as articulated in *Graham v. Connor*, 490 U.S. 386, 394 (1989), applies to excessive force claims brought under common law claims for gross negligence. *Stutzman v. Krenik*, 350 F. Supp. 3d 366, 383 (D. Md. 2018) (citing *Richardson v. McGriff*, 361 Md. 437, 452, 762 A.2d 48 (2000)); *see also Torbit v. Baltimore City Police Dep't*, 231 Md. App. 573, 593, 153 A.3d 847, 858 (2017). Because Defendant Capalupo's use of force was not objectively unreasonable and did not amount to a constitutional violation, *see supra*, Section III.C.3, it therefore does not form the basis of a claim for gross negligence. Defendants do not contest the gross negligence claim as it pertains to Defendant Serlo's use of force. ECF No. 25-1 at 17.

Regarding Plaintiff's allegedly unlawful detainment, while Defendants may have acted unreasonably, Plaintiff's allegations do not meet the high bar for gross negligence claims.[10] Courts have found a gross negligence claim based on an arrest without probable cause where a defendant "made material misrepresentations and omissions in the Application for [the plaintiff]'s arrest warrant." *Jackson v. Carin*, No. 8:19-CV-00564-PWG, 2020 WL 998736, at *6–7 (D. Md. Mar. 2, 2020); *see also Hicks v. Anne Arundel Cty.*, No. CV JKB-20-0022, 2020 WL 7624773, at *9 (D. Md. Dec. 22, 2020) ("A reasonable jury could determine that Cpl. Pamer exhibited gross negligence through his alleged repeated false statements about Hicks's involvement in the assault on Allen, his alleged lies about video footage concerning Hicks, and his alleged inadequate questioning of witnesses—especially because Cpl. Pamer had reason to know that his actions could result in the incarceration of an innocent individual."). Additionally, the Fourth Circuit has found that a drafter of a probable cause statement acts with reckless

---

[10] The Court is not aware of authority applying the same "objectively unreasonable" test applied in the context of excessive force-gross negligence claims to gross negligence claims premised on false imprisonment or unlawful seizures.

disregard where he or she "fail[s] to inform the judicial officer of facts he knew would negate probable cause." *Id.* (quoting *Nero v. Mosby*, 890 F.3d 106, 126 (4th Cir. 2018)). Plaintiff has not alleged comparable knowing or reckless acts here—he alleges only detention without justification, without more. Accordingly, the gross negligence claim will be dismissed to the extent based on the allegedly wrongful detentions.

### C.  Allegations Against Defendant County

Defendants argue that the common law claims for false imprisonment, negligent training, gross negligence, and negligence (Counts III, VII, VIII, and IX) should be dismissed against the County because the County is immune from suit for common law torts. ECF No. 25-1 at 19. Indeed, the County is immune from liability for common law torts when the conduct was committed in a governmental capacity, and law enforcement acts are quintessentially governmental, so the County is immune from suit for the common law claims listed above. *See Moore v. Peitzmeier*, No. CV TDC-18-2151, 2019 WL 1370097, at *2–4 (D. Md. Mar. 26, 2019); *Crouch v. City of Hyattsville*, No. CIV.A. DKC 09-2544, 2010 WL 3653345, at *4 (D. Md. Sept. 15, 2010). And while Plaintiff is correct that the County may have indemnity obligations, *see* ECF No. 27 at 33–35, such obligations do not make the County itself a proper party as to these claims. *See Martino v. Bell*, 40 F. Supp. 2d 719, 723 (D. Md. 1999) (finding that, while the LGTCA makes local governments liable for certain judgments against their employees, it does not allow plaintiffs to name a county directly); *see also Johnson v. Baltimore Cty., Md.*, No. 11-CV-3616, 2012 WL 2577783, at *8 (D. Md. July 3, 2012). Thus, these claims are dismissed to the extent alleged against the County.[11]

---

[11] Plaintiff asserts an additional argument against dismissal of the claim against the County for negligent hiring, training, and supervision. ECF No. 27 at 31. According to Plaintiff, barring that claim creates the same "void in liability" that the Maryland Court of Appeals found violated Article 19 of the Maryland Declaration of Rights in *Cooper v. Rodriguez*, 443 Md. 680, 118 A.3d 829 (2015). However, the Court is not inclined to contradict state law

Defendants also argue that the claims of false imprisonment and excessive force brought under the Fourth Amendment pursuant to § 1983 (Counts I and IV) should be dismissed as to the County because "[a] municipality cannot be held liable in a § 1983 action under a theory of *respondeat superior*." *Lee v. O'Malley*, 533 F. Supp. 2d 548, 553 (2007) (citing *Monell v. Department of Soc. Svcs.*, 436 U.S. 658, 194 (1978)); *see also Canton v. Harris*, 489 U.S. 378, 385 (1989) (municipal liability under § 1983 permitted only "where the municipality *itself* causes the constitutional violation at issue"). Indeed, where the claims involve conduct by County officials, the County will not be held liable under a theory of vicarious liability. Instead, the County may be liable if the County officials violated Plaintiff's constitutional rights, and that violation resulted from an official policy or custom of the local government. *See Monell v. Department of Soc. Svcs.*, 436 U.S. 658, 194 (1978); *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). Plaintiff's *Monell* claim is thus the proper vehicle for a claim against the County based on the officer's actions, and the false imprisonment and excessive force claims brought under the Fourth Amendment will be dismissed as to the County.

---

precedent finding local governments are immune from claims of negligent hiring, training, and supervision. *See Clark v. Prince George's Cty.*, 211 Md. App. 548, 558–59, 65 A.3d 785, 791 (2013); *see also Lanford v. Prince George's Cty., MD*, 199 F. Supp. 2d 297, 302 (D. Md. 2002); *Brown v. Bratton*, No. CV ELH-19-1450, 2020 WL 886142, at *36 (D. Md. Feb. 21, 2020); *cf. Devnew v. Brown & Brown, Inc.*, 396 F. Supp. 2d 665, 671 (E.D. Va. 2005) ("[W]hen a question of state law presents an issue of first impression, or if a possible interpretation might have the result of creating new law, a federal court must err on the side of restraint.").

**IV.    CONCLUSION**

For the foregoing reasons, the parties' Joint Motions for Extensions, ECF No. 7; ECF No.

26; ECF No. 28, are granted, and Defendants' Motion to Dismiss, ECF No. 25, is granted, in

part, and denied, in part. Specifically, Counts I, II, and III are dismissed against the County;

Counts IV, V, VIII, and IX are dismissed except as to Defendant Serlo; and Count VII is

dismissed. A separate Order follows.


Date: <u>August  30, 2021</u>                    __/s/_____

                                                                    GEORGE J. HAZEL
                                                                    United States District Judge